FREDERICK JULIAND and JOHN R. JULIAND, Executors of CATHARINE R. JULIAND, deceased, Respondents, v. WILLIAM WATSON, impleaded, etc., Appellant.

One who is interested in the securities pledged by an individual bank for its circulating notes, and who has signed the certificate prescribed by section 6 of the act of 1854 (chap. 242), is responsible to third persons as a general partner in such bank.

The continuation of the business of banking after the death of one of the partners, is, as to all the survivors interested in the securities upon which

the business is continued, a continuation of the partnership, and they remain liable as partners therein.

(Argued December 5th, 1870, decided February 7th, 1871.)

APPEAL from the late General Term of the Supreme Court in the sixth judicial district, affirming a judgment for the plaintiff upon the report of a referee.

The referee found:

1. That Arnold B. Watson, prior to the 1st day of January, 1860, was an individual banker under the general banking act of 1838, and carrying on business as a bank of discount, deposit and circulation, and the usual business of banking, under the name of the Unadilla Bank, at Unadilla, in the county of Otsego, and State of New York.

2. That the defendants, William Watson and Clark I. Hayes, were at the time directly interested with A. B. Watson in conducting the banking business, and in the circulating notes obtained by A. B. Watson as an individual banker, and in the benefits and advantages of circulating the same, and in the securities deposited in the bank department to obtain the circulating notes.

3. That A. B. Watson became a banker in 1844, Hayes became interested in 1858, and the appellant, William Watson, and another William Watson (who died in 1857), filed a certificate of their interest in the circulation of the bank in May, 1854. That the appellant, William Watson, was the redeeming agent of the Unadilla bank at Albany, from 1857 to about June 1st, 1866, and that his actual connection with A. B. Watson and the bank continued the same after, as it was prior to, the death of the other William Watson.

4. That the business was carried on at Unadilla, in the name of the Unadilla Bank. A. B. Watson was designated as president, and Hayes cashier, from as early as the 8th of May, 1854, to June 10th, 1866, and, during that time, gave to depositors of money pass-books, in which were entered the amounts of money deposited, and also the payments made.

5. That Catharine R. Juliand, the plaintiff's testatrix, lived

in Greene, Chenango county, about twenty-five miles from the Unadilla Bank, for a long time prior to 1861, and until she died on the 13th of January, 1864.

6. That she left a will which was duly proved in 1867, and the plaintiffs were appointed and qualified as executors. ·

7. Prior to and on the 1st day of January, 1861, A. B. Watson and Hayes, as executors of Isaac Hayes, deceased, had in their hands the sum of $7,000, which was owing to Mrs. Juliand by virtue of the will of Isaac Hayes; and on the 2d day of February, 1861, she gave A. B. Watson and Hayes, as executors, a receipt for $7,000, for her share in the estate of Isaac Hayes. At this time she received from A. B. Watson and Hayes, executors, $1,011.68, and a pass book of the Unadilla Bank, in which was entered to her credit, as deposited in the bank, the sum of $5,988.32, which sum she was informed and believed had been deposited to her credit in the bank. But in fact only $947.48 in money was deposited. At this time A. B. Watson and Hayes had in the bank a note for upward of $20,000 given to Isaac Hayes, deceased, and held by him at the time of his death, and which came to them as executors, and for which they were indebted, and it was by reason of this note that the entry in the pass-book of $5,988.32 was made to the credit of Mrs. Juliand. From January, 1861, to October 29th, 1866, Mrs. Juliand drew from the bank on this account $2,198. William Watson, the appellant, knew nothing of this transaction.

8. The agreement was between A. B. Watson and Hayes that Mrs. Juliand was to receive seven per cent interest on her deposit.

9. That the account of Mrs. Juliand was with A. B. Watson as an individual banker, under the designation of the Unadilla Bank; and by the transaction, a debt to the amount of $947.48 was created by said A. B. Watson, in the business of banking, and that sum with interest, amounting in all to $1,475.28, is due to the plaintiffs.

It is then further found that the total amount entered in the pass-book of Mrs. Juliand is $7,495.12, and that the inte-

rest on that part not originally deposited in money ($5,988.32) is greater than all payments made on the account. It is further found that the appellant was the general partner of A. B. Watson and Hayes, in the business of banking, and that the sum of $947.48 was a debt created by A. B. Watson in that business; and that the best evidence that the appellant was a partner with A. B. Watson and Hayes, in the business of banking, is the certificate of May 8th, 1854.

The referee decided, as matters of law, that the payments made by the Unadilla Bank to Mrs. Juliand should be applied on that portion of the debt of A. B. Watson and Hayes, executors, not represented by money, and that the plaintiffs have judgment for $1,475.28.

*I. Lawson* (John H. Reynolds with him), for the appellant, on the question of the defendant's being a general partner, cited Collyer on Part., §§ 18, 44 and note; *Pattison* v. *Blanchard* (5 N. Y., 186); *Heimstreet* v. *Howland* (5 Denio, 68); *Holmes* v. *The United Ins. Co.* (2 Johns. Cases, 329). That the certificate was not conclusive evidence of partnership, he cited *Jackson* v. *Hobby* (20 Johns., 357, per PLATT, J.); *Richardson* v. *Gere* (21 Wend., 156); *The People* v. *Haddin* (3 Den., 220); *Sprague* v. *Birdsall* (2 Cow., 419); *Bridgewater, etc., Plank-road Co.* v. *Robbins* (22 Barb., 662); *Millered* v. *Lake Ontario, etc., Co.* (9 How. Pr., 238); *People* v. *Cook* (8 N. Y., 67); *People* v. *Van Slyck* (4 Cow., 297); *People* v. *Seaman* (5 Den., 409, and cases cited). That the death of William Watson worked a dissolution, he cited Collyer on Part., Perkins' ed., 104, and notes; Kent's Com, 5th ed., vol. 3, pp. 55, 56; Story on Part., §§ 317–319; *Scholefield* v. *Eichelberger* (7 Peters, 586, 594); *Dyer* v. *Clark* (5 Metc., 562). The amount paid Mrs. Juliand and credited the bank in her pass-book ($2,198) extinguished the debt of the bank to her ($947.48).

*Henry R. Mygatt,* for the respondents, that by force of the statutes the appellant was liable as a general partner in the

bank, cited 4 Rev. Stat., 6th ed., pp. 149, 152, 163, 181; Laws
of 1851, chap. 164; Laws of 1854, chap. 242, § 6. That the
appellant was in fact a general partner, he cited *Henderson* v.
*Bank* (7 Ell. & Bl., 364); *Harvey* v. *Scott* (63 Eng. Com.
Law, 92). That the certificate was conclusive evidence of
partnership, he cited *Palmer* v. *Lawrence* (3 Sandf. Sup. Ct.,
169); Starkie on Evi., 995, 3d Am. ed.; *People* v. *Zeyst* (23
N. Y., 140); *Miner* v. *Fredonia* (27 N. Y., 157, 160). That
the death of one of the William Watsons worked no dissolution
of the banking partnership of the survivors, he cited *Powis* v.
*Butler* (91 Eng. Com. Law, 646); Lindley on Part., 188.
The counsel also cited many cases on the law of appropriation
of payments, and upon other points not passed upon by the
court.

RAPALLO, J. We concur with the Supreme Court in the
opinion that William Watson was a general partner with his
co-defendants in the business of banking, under the name of
the Unadilla Bank. By being interested in the securities
pledged by the bank, for its circulating notes, and by signing
the certificate prescribed by section 6 of the act of 1854 (chap.
242), he must be deemed to have consented to assume the
responsibilities of a general partner, in respect to third per-
sons. That section declares that such certificate shall be
evidence in all courts and places that the person signing and
acknowledging the same is a general partner with the origi-
nal banker in the business of banking, and as such is liable
with him individually for all debts and obligations created by
him in such business. The party signing such certificate
certainly makes himself a ostensible partner, if not a part-
ner in fact. The certificate signed by the defendant in this
case, contained an acknowledgment that he was interested in
the circulating notes and in the benefits and advantages of
circulating the same; and we think that the intent of the
act was to impose on every person so certifying the liabilities
of a general partner.

The continuation of the business of the bank, after the death

ot the other William Watson, with the securities in which the defendant was interested, is admitted by the answer and found by the referee, and for that reason the partnership must be deemed to have been continued by the survivors. Either of them might have treated the partnership as dissolved by the death of one of its members, and insisted upon its affairs being wound up. But if they chose to continue the business, they were liable as copartners for their subsequent transactions.

The admission in evidence of the quarterly reports signed by A. B. Watson and C. J. Hayes, even if erroneous, was not material, as upon the other evidence in the case, in connection with the pleadings, the referee would have been obliged to find that the partnership continued.

We are also of opinion that the court below was right in its conclusion that the payments made to Mrs. Juliand, and to her executors, did not extinguish the liability of the bank for the money actually deposited, although we arrive at that result by a somewhat different process.

The credit to Mrs. Juliand in her pass-book was of an entire sum of about $6,000, the whole of which was apparently an indebtedness of the Unadilla Bank to her.

The referee has decided that in reality only $947.48 of this sum was a debt of the bank, or in other words, of Wm. Watson, A. B. Watson and C. J. Hayes as copartners, and that the residue was the private debt of A. B. Watson and C. J. Hayes.

Payments were made generally on the amount contained in the pass-book, to Mrs. Juliand in her lifetime, and to her executors after her death, amounting in the aggregate to $2,198.

But the referee has not found that any of these payments were made by the partnership or the bank or out of its funds or by A. B. Watson, as banker. On the contrary, the finding is that they were made by A. B. Watson and C. J. Hayes, or one of them. The payments were entered in the pass-book, and in the books of the bank, against Mrs. Juliand's credit

therein. But in that credit, the money due her from A. B. Watson and C. J. Hayes, as individuals, was included.

If these payments had been made by the bank, in the course of its banking business, and out of its funds, they would have extinguished the debt due from the bank, for which the appellant, as a partner in the banking business, was liable; and they could not be applied to the private debt of the individual partners. But if they were made by A. B. Watson and C. J. Hayes, or either of them individually, or out of their individual funds, they reduced their individual debt, and did not affect the indebtedness of the partnership or the bank for the $947.48 actually deposited.

The question is not one of law as to the equitable rule for the application of payments in the case of several debts of the same debtor, but one of fact. The debtors were different, and the question is by whom were the payments made, by the bank or partnership or by the individual debtors? If by the latter, the partnership is not entitled to the benefit of them. If by the former, the individual debtors are not entitled to the credit. The referee has found simply that the payments were made by A. B. Watson and C. J. Hayes, or one of them, and he has given the credit to them on their individual debt. In the absence of any controlling evidence on the point, the general rule that the burden is upon the appellant to show that the judgment is erroneous, and that when an intendment can be made, it must be made in support of the judgment, requires us to assume that the referee found that the payments were made by Watson and Hayes, individually, and not on behalf of the bank or out of its funds. The liability of the defendant having been established, the burden of discharging himself by proof of payment rested upon him, and there is no finding, or controlling evidence establishing that the referee should have found that such payment was made.

The judgment should be affirmed with costs.

All the judges concurring, except PECKHAM, J., who did not sit.

Judgment affirmed.